CONGREGATION OF SISTERS OF PERPETUAL ADORATION *v.* JANE.

[70 South. 818.]

1. COVENANTS.  *Covenant against incumbrances.  Breach.  Liability. General covenants.*

Where a vendor sold land for a valuable consideration by a general warranty deed, the granting clause of which was "do hereby sell, convey and warrant" and further provided," to have and to hold the same free from and against the legal claims of all persons whomsoever," which land had been previously assessed

for taxes, and which was sold for taxes, and not redeemed within two years, where such tax lien had been unknown to the vendors and where the vendor, having notice of the tax sale in time to redeem, acted upon legal advice and failed to redeem, but in no way misled the vendor. In such case the vendee was entitled to recover of the vendor the consideration paid for the land.

2. Covenants. *General covenants.*

The warrantee, in a deed containing a general covenant must deal fairly and in fidelity to his warrantor.

3. Covenants. *Breach. Payment of claim by covenantee.*

Where a vendor of land in his deed warranted against the legal claims of all persons, and the land at the time was subject to a paramount tax lien, the vendee might pay the tax or redeem the land from a tax sale and recover from the vendor the amount so paid, and a vendee in such case may buy in an outstanding title or incumbrance to protect his possession, but in so doing he acts at his peril in determining whether the outstanding title or incumbrances is valid, which right, however, is a mere privilege accorded him, and not a duty imposed by law.

Appeal from the circuit court of Jasper county.
Hon. T. H. Barrett, Judge.

Suit by the Congregation of Sisters of Perpetual Adoration against Edmund J. Jane. From judgment for plaintiff for sufficient amount it appeals.

The facts are fully stated in the opinion of the court.

*Denny & Denny* and *Wood & Taylor*, for appellant.

*Ford & White* and *Wells, May & Sanders,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellant, a religious and educational society, instituted this action as plaintiff in the court below against appellee to recover damages for the alleged breach of a general covenant of warranty, evidenced by a certain deed of conveyance executed by appellee, Jane, to appellant for a certain tract of land in Pascagoula, Miss. The land conveyed belonged on and prior to the 1st day of

February, 1906, to the heirs of one Mary Davis, deceased, and was sold by a commissioner of the chancery court August 29, 1906, and purchased at said sale by appellee. The sale was confirmed in October; a commissioner's deed was executed to appellee October 23, 1906; and on October 24, 1906, appellee conveyed the land to appellants by a general warranty deed, the exact language of the granting clause of which is "do hereby sell, convey, and warrant," and further providing, "to have and to hold the same free from and against the claims of myself, my heirs, assigns, and against the legal claims of all persons whomsoever." The land was assessed in the year 1906 to "Mrs. Mary Davis Est.," and, the taxes being unpaid, the tax collector of Jackson county, on the first Monday in March, 1907, sold and conveyed the land for the delinquent taxes due thereon, one J. E. Lockard becoming the purchaser thereof and receiving a tax collector's deed. The land was not redeemed from this tax sale within the two years allowed. The tax collector's deed was duly delivered, and Mr. Lockard thereafter filed a bill in the chancery court against appellant and Mr. Jane to confirm his tax title. Mr. Jane filed a disclaimer; and the right of Mr. Lockard to confirmation of his title was contested and litigated by appellant, but unsuccessfully. After the chancery court confirmed the tax title, appellant instituted the present action to recover the consideration of one thousand six hundred dollars paid for the land, together with lawful interest. It appears that Mr. Jane bid at the commissioner's sale the sum of one thousand two hundred and forty-one dollars, and accordingly he sold the land at a profit. Possession was surrendered to Mr. Lockard after termination of the chancery suit.

Appellee filed a plea of general issue, and also a special plea setting out the fact that the land at the time of its sale was assessed to the Davis estate, that appellee did not know the taxes were unpaid, and that he did not know the land was sold for taxes until after the sale had ripened into a good title, and further averred that more

than sixty days before the expiration of the period for
redemption had expired that notice provided by our stat-
ute was served on appellant acquainting it with the tax
sale, and thereby giving due warning to redeem, that
appellant could have redeemed the land for the sum of
fourteen dollars and sixty-five cents, and that appellant
failed and refused to redeem, and permitted the land to
be sold and the title of appellant thereby defeated by
and through appellant's own negligence. There was a
demurrer to this plea which was overruled; and there-
upon appellant filed a replication denying the material
allegations of the plea, and especially denying any bad
faith on the part of appellant. Appellee with its special
plea tendered the sum of fourteen dollars and sixty-five
cents and all costs incurred in this suit as a full measure
of his liability. There was an agreed statement of facts,
and the cause was submitted to the trial judge without
jury; and judgment was rendered by the court, limiting
appellant's recovery to the amount tendered, fourteen
dollars and sixty-five cents and costs. From this judg-
ment, appellant prosecutes this appeal.

The agreed statement, in addition to the facts above
detailed, recites that appellant was required to pay fifty
dollars and five cents court costs in defending the Lock-
ard suit, exhibits a copy of the decree rendered by the
chancery court confirming the title, and recites that pos-
session of the premises was surrendered to Mr. Lockard
under the decree, and that the latter is now recognized as
the owner of the land. The agreement has the following
additional recitals:

"That sixty days before the 5th day of March, 1906,
the date on which said tax title became final by reason
of expiration of redemption, that the chancery clerk of
Jackson county, Miss., issued a notice in the form pres-
cribed by the statute to the plaintiffs, as the owners of
said lands described in said deed, and who were then in
possession thereof, of the fact that said lands had been
sold for taxes and of the date of expiration of the period

of redemption, which notice was received by plaintiffs; that upon receipt of said notice the plaintiffs went to the courthouse of Jackson county to inquire of the chancery clerk the meaning of the notice and that the clerk suggested that they see some lawyer about the matter; that thereupon the plaintiffs called upon a reputable lawyer in the city of Pascagoula and showed him said notice, and these plaintiffs explained fully to said lawyer the facts and circumstances of the tax sale and of the purchase of the said lands by plaintiffs of said defendant, and said lawyer knowing that the plaintiffs were a religious and charitable society, and on account of such fact their property would not be liable to such taxation, and without knowing and under the belief that said property was the property of said religious society, and was not liable to taxation, the plaintiffs herein then believing and having reason to believe that said attorney was fully informed as to the *status* of title to said lands, their purpose thereof, the purchase thereof by defendant, and as to said tax sale, and said attorney advised the plaintiffs that the tax title was void and they could disregard the notice, and the plaintiffs thereupon acted upon this advice, without notifying the defendant of the fact that said property had been sold for taxes or the fact that they had received said notice, and did not redeem the same from said tax sale, the plaintiffs believing they were under no duty to so inform said defendant herein, and that he knew, or would be advised, of such tax sale and their failure to redeem, the plaintiffs not having undertaken the duty to so inform said defendant, and not intending or seeking thereby to conceal such facts from said defendant or to mislead him in any manner thereby.

"That the defendant, E. J. Jane, did not, in fact, know that the taxes for 1906 were not paid upon said property at the time of his conveyance thereof, and did not know or learn about said tax sale until after the period of redemption from said tax sale had expired, and that plain-

tiff did not know that defendant was ignorant of such facts.

"That plaintiffs gave, as a consideration for said lands in the purchase thereof from said defendant, the sum of one thousand six hundred dollars, and that no part of same has been returned to plaintiffs by the defendant."

Appellee contends that, while the deed contains a covenant against incumbrances, this, if broken at all, is broken when made; that the measure of damages is compensation for losses proximately resulting from the breach; that the covenant against incumbrances is a contract of indemnity and the covenantee is under obligation to protect himself as much as possible against loss and to reduce his damages. To state the contention otherwise, appellee contends that appellant was under duty to pay the taxes, and at least to redeem the land from the tax sale within the two-year period allowed and thereby prevent a sale by the tax collector. Appellant, on the contrary, contends that the covenantee is under no duty or obligation to discharge or pay off the tax lien, but has a right to stand on its covenant; to expect payment of the taxes or the discharge of any tax lien by the covenantor; and to recover on the covenant in the event the covenantor fails to perform his duty in providing against any and all liens whatsoever.

In our judgment, appellant on the pleadings and agreed statement of facts, was entitled to recover. There was a paramount lien upon the land for the taxes for 1906 at the time the deed was executed and delivered. Against this lien appellee voluntarily executed his general covenant, and thereby assumed the burden of defending the title and discharging the paramount lien then existing, whether the existence of the lien was known or unknown to either party. Mere knowledge of this lien on the part of appellant could in no wise operate to shift the burden upon it; and the agreed statement demonstrates conclusively that appellant did nothing to mislead appellee. The pleadings and the agreed statement reflect that ap-

pellant is a religious society, chartered under the laws of Louisana, and maintains a convent or establishment at Pascagoula, Miss.; that, while members of this society received notice of the tax sale in time to redeem, they promptly made inquiry of the chancery clerk as to the meaning of the notice; that the clerk referred them to a lawyer; that they thereupon consulted a reputable lawyer, who advised them that on account of the fact their society was a religious and charitable society their property was not liable for taxation; and that appellants relied upon this legal advice, and for that reason failed to redeem. It is shown further that appellant did not know whether Mr. Jane had knowledge of this tax sale or not, and, of course, said nothing that induced Mr. Jane to refrain from discharging the lien. Appellant therefore, on the question of good faith, is in the same attitude it would be in had it not received any notice whatever of the sale for taxes until after the period for redemption had expired; and both parties, on the question of good faith, are placed in the attitude they would be in had neither heard anything at all about the tax sale until Mr. Lockard acquired a good and valid title. Aside from any notice which a valid assessment for taxes, advertisement of the regular tax sale for the first Monday in March, 1907, the public records, or the law would impute to Mr. Jane, his contract defines his duty and measures his liability; and it is upon this contract that appellant relies.

For the purposes of this opinion, it may readily be conceded that the warrantee in a deed containing the general covenant "must deal fairly and in fidelity to his warrantor," as said by our court in *Dyer* v. *Britton,* 53 Miss. 270. It is true also that appellant might have paid the taxes or redeemed the land from tax sale and recovered the amount so paid, as held by this court in *Swinney* v. *Cockrell,* 86 Miss. 318, 38 So. 353. The vendee may buy in an outstanding title or incumbrance, and thereby protect his possession. In so doing he acts at his peril in judging whether the outstanding title or incumbrance is

valid. This, however, is a mere privilege accorded the vendee, and is not a duty imposed by law. As said by our court in *Kirkpatrick, Adm'x.* v. *Miller et al.,* 50 Miss. 521:

"He has done what was necessary for his own safety, and what was incumbent primarily on the vendor. If he had waited until a recovery had, then he could have pursued his covenant, and recovered the price paid for the land."

The views expressed by the supreme court of Texas (*Carswell* v. *Habberzettle,* 99 Tex. 1, 86 S. W. 738, 122 Am. St. Rep. 597) are apposite to the instant case:

"The covenantee in a case like this makes no promise to the covenantor, and owes him no duty. On the other hand, it is the duty of the latter to remove the incumbrance. Therefore, as we think, that if to the debt of the covenantor, which constitutes the incumbrance on the land, there is annexed, either by law or by contract, some condition, by the happening of which the debt may be increased, and the condition happens, the increment is as much a part of the incumbrance as the original debt; and we also think the rule would apply with peculiar force when the happening of the contingency is the result of the covenantor's own default."

The same principle is recognized and enforced in the case of *Wm. Farrell Lumber Co.* v. *Deshon,* 65 Ark. 103, 44 S. W. 1036. The court in this case, through Wood, J., says:

"Here the covenant against incumbrances was broken by reason of a forfeiture for the nonpayment of taxes which existed at the time of the execution of the deed containing the covenant. Appellant redeemed one of the tracts, but, failing to redeem the other, the title to this became absolute in the state, and, in order to get title to this, it was compelled to purchase from the state, paying the sum of one hundred and fifty-one dollars. Negligence cannot be predicated upon a failure by appellant to redeem from the tax forfeitures. True, it might have done so; but it was under no duty or obligation of that

kind, and its right at law to stand on its covenant, and to recover damages for breach of same, cannot be affected by its failure or refusal to perform a duty which devolved upon another. . . . Appellee had broken his covenant, and it was his duty to see that no injury resulted to appellant's title by reason of said breach. The court therefore erred in its declaration of law, and in refusing to allow the credit of one hundred and fifty-one dollars, instead of fourteen dollars and one cent.''

If appellant had in any way promised to pay the taxes or had said or done that which threw appellee off guard and caused him to fail or refuse to perform the duty primarily resting upon him, the case might be different. Conceding that appellee did not, in fact, know of the tax lien or sale, and, conceding also the good faith of appellant in relying on the advice of counsel, both are innocent parties, and as between them appellee certainly must suffer the burden he voluntarily assumed.

These views necessitate a reversal of the case, and, there being no dispute as to the amount, judgment will be entered here for appellant.

*Reversed.*